# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY G. SMITH, | 1:06-CV-01679 OWW GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| WARDEN MENDOZA-POWERS, et al., | |
| Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of San Bernardino, following his conviction by jury trial of murder in the second degree in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1.  On July 27, 1987, Petitioner was sentenced to serve an indeterminate term of fifteen years to life in state prison with the possibility of parole. Id.

On December 13, 2005, Petitioner attended a subsequent parole suitability hearing before

the California Board of Prison Terms (now the Board of Parole Hearings - "Board"). See Answer, Exhibit 5. Petitioner participated in the hearing and was represented by counsel. Id. At the conclusion of the hearing, the Board concluded Petitioner was unsuitable for parole and denied rehearing for three years. Id. at 71, 75.

Petitioner sought relief in the state courts. He filed a petition for writ of habeas corpus in the Kings County Superior Court on March 28, 2006. See Answer, Exhibit 6. The petition was denied in a reasoned decision on May 16, 2006. See Answer, Exhibit 7. He then filed a habeas petition in the California Court of Appeals, Fourth Appellate District, on August 22, 2006. See Answer, Exhibit 8. That petition was summarily denied on August 28, 2006. See Answer, Exhibit 9. Finally, he filed a petition for review in the California Supreme Court on September 5, 2006; that petition was summarily denied on October 19, 2006. See Answer, Exhibits 10, 11.

Petitioner filed the instant petition for writ of habeas corpus in this Court on November 21, 2006. The petition for writ of habeas corpus challenges the 2005 parole decision. On April 12, 2007, Respondent filed an answer to the petition. Respondent concedes the petition is timely filed; however, Respondent argues the petition is unexhausted. Petitioner did not file a traverse.

**FACTUAL BACKGROUND**

The facts of the commitment offense are taken from the record of the 2005 parole hearing, as follows:

> On February 2, 1986, the body of the victim was found in the intersection of Bell Mountain and Johnson Road in Apple Valley. His hands were tied behind his back, and he was lying in a pool of blood. The victim died as a result of multiple blunt wounds to his head and neck. That same day, his pickup truck was located near Lucerne Valley. Someone had attempted to burn the vehicle. Investigators learned the victim had been suspected of molesting the eight-year-old daughter of Judy Fendt . . . while the couple was living in Texas. Judy Fendt was interviewed and told deputies the victim was scheduled to arrive from Texas, but never arrived. The couple had planned to return to Texas.
>
> Michael Fendt and [Petitioner] told the deputies some more stories. Deputies became suspicious because a witness had seen the victim's truck at the Fendt residence on February 1. In addition, the victim and Mrs. Fendt had been seen together in a donut shop in Victorville. Deputies learned that some of the family members were in Texas. They discovered co-defendant Mr. Cook had been arrested in Garland, Texas on a fugitive warrant from Florida. He reportedly had escaped from Florida while serving a prison term for second degree murder. [Deputies] contact[ed] his neighbors and family

members and they were interviewed.

Based on these interviews and other sources of information, it was determined the murder of the victim took place in the following manner. Prior to February 1, 1986, Judy and Michael Fendt spoke disparagingly of the victim, and Mr. Fendt threatened to kill him if he ever came to California. Judy Fendt spoke to the victim by telephone and later told her husband he would be there the following night. The victim arrived from Texas on February 1, [and] contacted Mrs. Fendt from a telephone. Peter Garrity . . . drove her to Vaughn Shopping Center and left. The couple met in a donut shop and conversed in a friendly manner. A short time later, they proceeded to the Apple Valley dump in the victim's truck. Following in another vehicle was Michael Fendt, [Petitioner], Gary Cook, and Peter Garrity. At the dump, the victim was dragged from his truck, and his hands were tied behind his back. [Petitioner] took Judy Fendt home. [He] rejoined the group a short time later. Both Gary Cook and Peter Garrity told officers it was their impression the victim was simply to be beaten and told to leave Judy and the children alone. The victim was taken to another location where Michael Fendt and [Petitioner] used a baseball bat and board to beat him to death. Gary Cook and Peter Garrity later unsuccessfully attempted to burn the victim's truck. Later that night, Judy Fendt was advised of the beating, and in particular, the initial blow to the back of the neck delivered by [Petitioner]. She responded, "Well, that's what did it." To help conceal the crime, Mrs. Fendt contacted the victim's mother and expressed her concern that the victim had not yet arrived. [Petitioner's] co-defendants were subsequently taken into custody.

See Answer, Exhibit 5 at pp. 8-12.

## DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370

F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.    Exhaustion

A state prisoner proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis);

1  Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

2  　　　　Additionally, the petitioner must have specifically told the state court that he was raising
3  a federal constitutional claim.  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666,
4  669 (9th Cir.2000), *amended*, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th
5  Cir.1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998).  In Duncan, the United States
6  Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-366.  The Ninth Circuit examined the rule further, stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court *unless he specifically indicated to that court that those claims were based on federal law*. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the *petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident*," Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds. Hiivala v. Wood, 195 F3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .
> In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added).

　　　　In this case, Respondent contends the instant petition in unexhausted. Respondent points to the petition for review before the California Supreme Court. In that petition, as correctly argued by Respondent, Petitioner did not raise a federal claim or alert the state court that his claims were based on federal law. Rather, the claims were entirely based on state law. Petitioner referred only once to federal law when he stated at the end of Ground One: "Constitution, US, Due Process Clause violation." See Answer, Exhibit 10. This statement is insufficient to

6

establish exhaustion. Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999) ("[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial," do not establish exhaustion.).  Therefore, Respondent is correct and the petition should be dismissed for failure to exhaust state remedies. 28 U.S.C. § 2254(b)(1).

III.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128.  In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id.  Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both

situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was represented by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Answer, Exhibit 5.

Petitioner, however, contends the Board's decision was arbitrary, capricious, and had no evidentiary support. After reviewing all relevant evidence, the Court finds that the state court rejection of Petitioner's claims was not unreasonable, because the Board's decision is supported by "some evidence."

Title 15, of the California Code of Regulations, Section 2402(c) sets forth certain negative factors which the Board would consider in determining whether Petitioner is suitable for parole.

Section 2402(c) provides:

> Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general

guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>>
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>>
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>>
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>>
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

15 Cal.Code Regs. § 2402(c).

In denying parole in 2005, the Board considered and found several factors indicating unsuitability per § 2402(c). Primarily, the Board relied on the facts of the commitment offense. Pursuant to § 2402(c)(1)(B), the Board found the second degree murder was carried out in a dispassionate and calculated manner. This finding is certainly supported by "some evidence." Petitioner and his crime partners planned the murder in advance, lured the victim to a remote location, ambushed the victim, tied the victim up, and beat the victim to death with a baseball bat and board. These facts fit well within the contours of § 2402(c)(1)(B).

1    The Board further found the murder was committed in an exceptionally cruel and callous
2 manner pursuant to § 2402(c)(1)(D). The record shows this finding is also supported by some
3 evidence. As stated above, Petitioner tied the victim up, then beat the victim multiple times with
4 a bat or board about the neck and neck area causing multiple blunt trauma wounds which led to
5 the victim's death. In light of these facts, there is some evidence to support the finding that the
6 offense was carried out in a callous disregard for human suffering. 15 Cal. Code Regs.
7 § 2402(c)(1)(D); Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir.2003).

8    Next, the Board found Petitioner had an extensive and escalating violent criminal history
9 pursuant to § 2402(c)(2). This finding is supported by the fact Petitioner had been previously
10 convicted of robbery, attempted rape by force, assault with a deadly weapon, auto theft, interstate
11 transport of a stolen vehicle, burglary, several escapes, grand theft, and armed robbery. See
12 Answer, Exhibits 3, 4. Further, Petitioner had served three prior prison terms before the instant
13 offense of murder. Id.

14    In addition, the Board found Petitioner had an unstable social history pursuant to
15 § 2402(c)(3). This finding is supported by Petitioner's admitted illegal substance abused
16 problem, which involved using speed, marijuana, LSD, mushrooms, hashish, heroin, reds, opium,
17 and cocaine. See Answer, Exhibit 5 at 23, 31.

18    The Board also noted psychological factors demonstrated unsuitability pursuant to
19 § 2402(c)(5). According to the psychological report dated June 15, 2000, authored by Dr.
20 Preston, Petitioner's "likelihood of violent behavior . . . is still significant, particularly if a
21 situation would occur that would trigger his rage." See Answer, Exhibit 5 at 73. The Board
22 determined Petitioner's gains were recent and he needed additional therapy. The Board's finding
23 is supported by "some evidence."

24    Finally, the Board noted Petitioner did not have firm parole plans should he be released.
25 See § 2402(d)(8). Petitioner possessed a marketable skill; however, he had no employment
26 prospects or offers waiting for him. Further, the Board did not have documentation of where
27 Petitioner intended to live. The Board recommended that Petitioner solidify his parole plans and
28 obtain vocational training.

The Board also considered factors tending to show suitability. It was noted that Petitioner had remained disciplinary free since 1998. In addition, he had participated in several self-help and therapy programs and received exceptional work reports. Nevertheless, the Board found these positive factors, while promising for a possible future grant of parole, did not outweigh the Board's determination that Petitioner remained an unreasonable risk of danger to society if released.

It is apparent the Board considered all relevant evidence in this case and carefully balanced and assessed the various factors. Those findings were supported by at least "some evidence."

Petitioner also contends the Board is relying on the immutable circumstances of the underlying offense and his previous criminal history. The Ninth Circuit has held that serious questions involving a prisoner's liberty interest in parole would be raised if the Board continued to rely solely on the gravity of the offense and conduct prior to imprisonment to justify denial of parole, despite a prisoner's continuing demonstration of exemplary behavior and evidence of rehabilitation. Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003). As discussed above, however, the circumstances of the offense and Petitioner's past criminal history, while very significant, were not the only reasons for the Board's decision. The Board also relied on Petitioner's psychological evaluations and lack of firm parole plans in denying parole.

Petitioner also takes issue with the fact that the Board in its 2005 decision denied parole for a period of three years rather than the normal annual review. Cal. Penal Code § 3041.5(b)(2) states:

> The board shall hear each case annually thereafter, except the board may schedule the next hearing no later than the following:
> ...
> (B) Up to five years after any hearing at which parole is denied if the prisoner has been convicted of murder, and the board finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding in writing.

In this case, Petitioner was convicted of murder, the Board found it was not reasonable to expect parole would be granted at a hearing in the next three years, and the Board provided its reasons for the finding. Petitioner claims the Board relied on virtually the same reasons in

denying parole for three years. Nevertheless, as argued by Respondent, Petitioner is complaining about the state's application of its own law and the claim is therefore not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989) (Federal courts are bound by state court rulings on questions of state law.). Accordingly, this claim must be rejected.

Last, Petitioner contends the Board failed to consider the positive factors demonstrating suitability pursuant to § 2402(d). However as stated above, this was simply not the case. The Board noted Petitioner's institutional behavior, i.e., lack of any disciplinary action since 1998, and his plans for the future, i.e., future living arrangement and plans for employment, but the circumstances demonstrating unsuitability outweighed these positive factors.

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.   The petition for writ of habeas corpus be DENIED; and

2.   Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

1  Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served
2  and filed within ten (10) court days (plus three days if served by mail) after service of the
3  objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
4  636 (b)(1)(C). The parties are advised that failure to file objections within the specified time
5  may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th
6  Cir. 1991).

     IT IS SO ORDERED.

     Dated:   **November 15, 2007**               **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE